LINDA A. SIGNORE *v.* FREDERICK A. SIGNORE
(AC 28040)

McLachlan, Beach and Mihalakos, Js.

Argued May 30—officially released September 9, 2008

*Lawrence S. Ogren,* for the appellant (defendant).

*Michael T. Bologna,* for the appellee (plaintiff).

McLACHLAN, J. The defendant, Frederick A. Signore, appeals from the decision of the trial court denying his postjudgment motion to modify the terms of a dissolution judgment with respect to alimony payments he was obliged to make to the plaintiff, Linda A. Signore.[1] The defendant claims that the court improperly (1) determined that the total amount he withdrew from his limited liability company, which included proceeds from loans requiring repayment, was income for purposes of modification of the court's alimony order and (2) applied the law of the case doctrine in reaching its conclusion that the defendant's gross income for 2005 exceeded $70,000.[2] We affirm the judgment of the trial court.

The court dissolved the parties' twenty-nine year marriage on July 30, 2002. The judgment of dissolution incorporated by reference the parties' separation agreement, which contained a clause setting forth the defendant's alimony obligations and the circumstances that would permit the parties to seek a modification of the agreement. Paragraph five of the agreement provides in relevant part that the defendant is obligated to pay the plaintiff $550 per week "if the [defendant's] *gross income* before reimbursement for driving

---

[1] The plaintiff is now known as Linda A. Jaworoski.

[2] The defendant also claimed that the court improperly considered his lifestyle and personal expenses in its calculation of his gross income. It is unnecessary to address this claim in light of our conclusions with respect to the other issues discussed in this opinion.

expenses [is] between $70,000 and $90,000 per year." (Emphasis added.) The paragraph further provides that the amount of the alimony payments would increase if the defendant's yearly income is greater than $90,000 and that the parties should seek a modification of the alimony payments if his yearly income is less than $70,000 or more than $105,000. The parties agreed that the alimony payments in a given year would be based on the defendant's income from the prior year. The term "gross income" was not defined in the separation agreement.

Shortly after the marriage was dissolved, the corporation that employed the defendant underwent a restructuring, and his position was eliminated effective January 17, 2003. The defendant filed a motion to modify his alimony obligation at that time, and the court, *Hiller, J.*, reduced his weekly payments to $400. On October 31, 2003, the plaintiff filed a motion to increase the alimony payments because the defendant had purchased a business. The defendant filed a cross motion to decrease the amount of his payments on May 18, 2004. By written decision filed June 22, 2004, the court, *B. Fischer, J.*, granted the plaintiff's motion and denied the defendant's motion. The court found that the defendant had become the owner of a gift basket business, organized as a limited liability company,[3] and had numerous benefits paid on his behalf through the business. In determining that the defendant's gross yearly income exceeded $70,000, the court included his draw from the business, automobile insurance premiums and expenses, health insurance premiums and a bonus he paid to himself from the business in December, 2003. The court increased the defendant's weekly alimony payments from $400 to $550.[4]

---

[3] The defendant is the sole member of the limited liability company.

[4] The defendant appealed from the court's decision on July 9, 2003. The parties filed a stipulation on October 22, 2004, in which they agreed, inter alia, that the defendant would pay the plaintiff "regular weekly alimony in

By motion filed May 3, 2006, the defendant sought to modify the alimony order issued by Judge Fischer, claiming that his income had decreased substantially "due to a downturn in his business . . . ." The court, *Wolven, J.,* held a hearing on the defendant's motion on August 10, 2006, at which the defendant and his expert, a certified public accountant, testified. By memorandum of decision issued August 24, 2006, the court found that in 2005, the defendant "withdrew" $141,000 from his business, that he repaid a loan from his parents, that his business obtained loans to remedy cash flow problems and that those loans were secured by the defendant's personal assets. The court also noted that the separation agreement did not contain a definition of gross income and indicated that it was adopting Judge Fischer's "calculation of gross income as the law of the case." On the basis of those findings, the court concluded that the defendant's gross income for 2005 exceeded $70,000, and it denied the defendant's motion to modify the alimony order. This appeal followed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the

the amount of $550.00 pursuant to the Court's Order dated June 16, 2004 (*[B.] Fischer, J.*)." The defendant withdrew his appeal on November 4, 2004.

record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Angle* v. *Angle*, 100 Conn. App. 763, 771–72, 920 A.2d 1018 (2007).

In the present case, the terms of the parties' separation agreement, incorporated into the judgment of dissolution, determine the circumstances under which the court can order a modification of the alimony order. See *Krichko* v. *Krichko*, 108 Conn. App. 644, 651, 948 A.2d 1092, cert. granted on other grounds, 289 Conn. 913, 957 A.2d 877 (2008) (appeal withdrawn May 19, 2009). The provisions of a separation agreement become an order of the court when incorporated into the dissolution judgment. *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 151, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). "[The] interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Citation omitted; internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

The parties agree that the determinative issue is whether the defendant's gross income for 2005 was less than $70,000.[5] Under the terms of the parties' separation agreement, the defendant was not entitled to seek a modification of the alimony order if his gross income exceeded that amount. The defendant claims that the court improperly denied his motion to modify the alimony order because it included debt incurred on behalf

[5] At oral argument before this court, both parties agreed that the "clearly erroneous" standard of review is applicable to this issue.

of the business as gross income. Specifically, the defendant argues that the $141,000 withdrawn from the business in 2005 included repayment of amounts borrowed from his parents and money borrowed from lending institutions, that he was required to repay those loans and that his gross income would have been less than $70,000 if the court properly had excluded those amounts in its calculation.

It is true, generally, that loans requiring repayment are liabilities, not assets, and cannot be included as income for purposes of determining support obligations. See *Zahringer* v. *Zahringer*, 262 Conn. 360, 815 A.2d 75 (2003);[6] *Schmidt* v. *Schmidt*, 180 Conn. 184, 429 A.2d 470 (1980); *Bishop* v. *Freitas*, 90 Conn. App. 517, 877 A.2d 922, cert. denied, 275 Conn. 931, 883 A.2d 1241 (2005). Nevertheless, even if we credit the defendant's argument that the amount withdrawn from the business included loan proceeds from his parents and lending institutions, and should not have been included as gross income for 2005, he cannot prevail on this claim.

The limited liability company's balance sheet and statement of cash flow for calendar year 2005, prepared by the defendant's expert and submitted as an exhibit

[6] In *Zahringer* v. *Zahringer*, supra, 262 Conn. 360, the plaintiff argued that no state has ever held that loans with an obligation of repayment constitute income for purposes of support. The defendant argued that there is no blanket rule and that courts are required to examine the nature of the loan. Our Supreme Court noted: "The issue of whether *any* loan, regardless of whether it is the result of an arm's-length transaction and irrespective of its terms, properly may be considered by the trial court in fashioning financial orders is not yet ripe for our consideration in this case because the trial court made no finding in this regard. Following our remand, should the trial court determine that the fund was not a gift, the trial court may make the necessary findings in connection with that issue. We further note that on remand the trial court will have before it the issue of whether . . . the settlement agreement approved by the court requires it to consider the funds, regardless of how they are characterized." (Emphasis in original.) Id., 369–70 n.2.

at trial, indicated that the defendant's total draw was $141,883. Of that amount, $32,000 was used to repay a loan from his parents. The loans from the three lending institutions totaled $45,171. Subtracting the $32,000 repayment to his parents and the $45,171 borrowed from the lending institutions from the defendant's draw of $141,883 leaves an amount of $64,712. The court, however, also found in its memorandum of decision that "[t]he defendant receives other benefits through the business, as well." The court did not specify the type or amount of those benefits, and the defendant did not request an articulation.

The court did, however, adopt Judge Fischer's calculation of gross income as the law of the case. In his memorandum of decision, Judge Fischer included health insurance premiums, automobile insurance premiums and automobile expenses in his calculation of gross income. At the hearing on the defendant's motion to modify the alimony order held on August 10, 2006, the defendant acknowledged that the sum of his medical insurance premiums, automobile insurance premiums, gasoline purchases and automobile repair expenses for 2005 was $6857. Adding $6857, as the "other benefits" referenced in the court's decision, to $64,712, the amount remaining from the defendant's draw after the amounts of the repayment to his parents and the loans from financial institutions are subtracted, results in a gross income of $71,569. The court denied the defendant's motion because it found that "the defendant's gross income for 2005 exceeded $70,000 . . . ." We conclude that, given the evidence before the court, its determination was not clearly erroneous.

The defendant further argues, however, that the court improperly adopted Judge Fischer's previous ruling as the law of the case. Specifically, the defendant claims that the court could not properly include his draw as income because borrowed funds are not earned funds.

The law of the case doctrine provides that "[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 395, 865 A.2d 1223 (2005). "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 130–31, 788 A.2d 83 (2002).

Here, as we previously concluded, even if the loan amounts are deducted from the defendant's draw, the court's determination that his gross income exceeded $70,000 is supported when the value of the "other benefits" is included.[7] With respect to the other findings made by Judge Fischer in his 2004 ruling, the defendant has given no persuasive reason for us to conclude that it was an abuse of the court's discretion to adopt Judge Fischer's calculation as the law of the case. Accordingly, the defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] Furthermore, it appears that the defendant's draw did not include borrowed funds when Judge Fischer made his determination as to the defendant's gross income in 2004. The defendant testified at the August 10, 2006 hearing that the financial statements of the business at that time did not include borrowed funds. Because Judge Fischer did not have that issue before him, there is no ruling and, therefore, no law of the case with respect to that claim.