NANCY J. ZOLL *v.* LEONARD A. ZOLL
(AC 28716)

Flynn, C. J., and Gruendel and Hennessy, Js.

Argued October 30, 2008—officially released January 27, 2009

*Louis Kiefer,* for the appellant (defendant).

*Opinion*

GRUENDEL, J. The defendant, Leonard A. Zoll, appeals from the judgment of the trial court rendered on his postjudgment motion to modify the terms of his alimony obligations to the plaintiff, Nancy J. Zoll. On appeal, the defendant claims that the court (1) entered several improper orders prior to disposing of his motion to modify alimony, (2) improperly sustained the plaintiff's objection to his requests for admission, (3) rendered an improper judgment on his motion to modify alimony and (4) improperly found him in contempt of court.[1] We conclude that this court does not have subject matter jurisdiction over the first claim and dismiss that portion of the appeal. We affirm the judgment of the trial court as to the remaining three claims.

The following facts and procedural history are relevant to our determination of the defendant's appeal. The plaintiff and the defendant married on February 27, 1982, and they have two children together—one born in 1984 and the other in 1986. On October 1, 2001, the plaintiff commenced the present action for dissolution of the marriage. On February 28, 2003, the court

[1] We point out that the plaintiff has not responded to the defendant's claims on appeal, having failed to file a brief with this court.

rendered judgment dissolving the marriage and ordering, inter alia, that the defendant pay periodic alimony in the amount of $175 per week and child support in the amount of $160 per week. Upon the termination of child support obligations, the defendant's alimony payment was to increase to $300 per week for a period of nine years.[2]

On May 27, 2006, the defendant was diagnosed with leukemia, and he began chemotherapy on June 8, 2006. As a result of the diagnosis and treatment, the defendant was unable to continue in his position as sales manager of the mortgage brokerage firm where he worked. Instead, he stayed on with the company as an independent loan officer, which enabled him to continue receiving company benefits without needing to work regular hours. The defendant spent seventy-four days in a hospital either for chemotherapy or due to complications from his condition between June 8, 2006, and the declaration that he was in remission on November 22, 2006. After the defendant entered remission, his oncologist recommended that he obtain a stem cell transplant, which would preclude the defendant from working in public for at least one year. If, however, the defendant elected not to undergo the stem cell transplant, the physician indicated that the defendant would be able to return to work almost immediately.

On June 14, 2006, six days into his treatment, the defendant filed a motion for modification of his alimony obligations under the original judgment of dissolution. In that motion, the defendant claimed that his diagnosis and inability to regularly work resulted in a "significant change of circumstance not contemplated at the time

[2] At the time that the defendant filed the motion that serves as the basis for the present appeal, the children of the marriage were both over the age of majority, and the $300 per week alimony obligation was in effect.

of the dissolution of marriage."[3] He therefore requested that his "duty to pay alimony be terminated."

On August 2, 2006, the court, *Prestley*, *J.*, entered a temporary order staying the defendant's alimony obligations. On September 13, 2006, a hearing was held on the defendant's motion at which the defendant's attorney was present, but the defendant was not. At that hearing, the defendant's attorney asked the court to consider a letter from the defendant's physician indicating that the defendant was hospitalized and undergoing treatment. The court, however, refused to consider the letter because no foundation had been laid for its admissibility. Without deciding the underlying motion to modify, the court, *Solomon*, *J.*, vacated the August 2, 2006 temporary stay and reinstated the original alimony order, noting: "As far as I'm concerned, there is no evidence to indicate that the gentleman's in the hospital any longer. I personally have represented clients who have this . . . and went to work with this disease for a year, year and a half and until they went through a bone marrow transplant, but they were able to work and they were able to earn an income. . . . So, effective today, I am vacating the stay." The defendant subsequently filed a motion to vacate the September 13, 2006 order. That motion was denied, but the defendant did not resume payment of alimony to the plaintiff. As a consequence of the defendant's failure to comply with his alimony obligations after the termination of the stay, the plaintiff filed a motion for contempt.

---

[3] This language in the defendant's motion mirrors that in General Statutes § 46b-86 (a), governing modification of alimony obligations, which provides in relevant part: "Unless and to the extent that the decree [of dissolution] precludes modification . . . any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite . . . may, at any time thereafter . . . be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

On September 24, 2006, the defendant served requests for admission upon the plaintiff pursuant to Practice Book § 13-22. The requests asked the plaintiff to admit to the truth of nineteen facts and the genuineness of nine documents. The plaintiff objected, noting: "The information known or readily obtainable by the [p]laintiff is insufficient to enable an admission or denial . . . ." On October 17, 2006, the defendant filed a motion to determine the sufficiency of the plaintiff's response to the requests for admission. At a hearing on November 17, 2006, the court, *Epstein, J.*, sustained the plaintiff's objection and denied the defendant's motion to determine the sufficiency of the response. The court further noted, however, that the information contained in the requests for admission could best be determined by deposing the defendant and his oncologist, which was later done.

On January 8, 2007, after discovery was complete, a hearing was held on the merits of the defendant's underlying motion to modify alimony, at which the defendant's attorney introduced the depositions of the defendant and his oncologist, along with other evidence related to the defendant's change in circumstances. On March 2, 2007, the court, *Simón, J.*, rendered judgment on the defendant's motion to modify and on the plaintiff's motion for contempt. The court found that prior to his treatment, the defendant earned a base salary of $60,000 per year and up to an additional $30,000 in bonuses and commissions. It further found that after the defendant started treatment, he began receiving social security disability payments. The court found that his income from all sources, including social security and the mortgage brokerage firm, totaled $601.65 per week and that his expenses totaled $516.28 per week. It concluded, therefore, that "[b]ased on the evidence presented, the defendant has met his burden of showing that there has been a significant drop of income

due to his health, which constitutes a substantial change of circumstances."

Having reached the conclusion that a substantial change in circumstances had occurred, the court reduced the defendant's alimony obligation to $100 per week, retroactive to June 14, 2006, the date that he filed the motion for modification. It further held that the defendant had "until July 1, 2007, to decide whether or not he will pursue the stem cell transplant. Should he choose to proceed with the transplant, this order will remain in effect until such time as he is cleared to return to work by his treating physician. If, by July 1, 2007, the defendant has decided not to have the procedure, then the alimony obligation will revert to $300 per week based on his earning capacity. Should the defendant earn any income over his present earnings at $601.65 per week, he is to pay the plaintiff an additional 20 percent of the net income after taxes, but no more than his previous obligation of $300 per week." The court further ordered the defendant to pay $3600 to the plaintiff representing $100 per week for the thirty-six weeks of missed alimony payments between the week of June 11, 2006, and the filing of the court's memorandum of decision.[4]

The court then turned to the plaintiff's motion for contempt and sanctions for failure to comply with the court order of September 13, 2006, reinstating alimony of $300 per week. The court found that the defendant "unilaterally stopped payments on June 16, 2006," and that after the September 13, 2006 hearing, the defendant was "under notice that his alimony payments had been reinstated and that he was under an obligation to pay those sums. The defendant failed to make any payment

---

[4] The court noted that despite not working, the defendant had received approximately $50,000 from various sources during the course of his treatment from which he could pay $3600 to the plaintiff.

whatsoever. The defendant ignored the order." The court, therefore, found the defendant in contempt of court and ordered him to pay a portion of the plaintiff's legal fees in the amount of $750, representing an estimate of the cost of prosecuting the contempt motion. This appeal followed.

I

We first address the defendant's claims relating to orders entered prior to the final disposition of the motion to modify his alimony obligations. The defendant argues that the court improperly (1) terminated the stay suspending payment of alimony on September 13, 2006, and (2) refused to admit into evidence the signed letter from his oncologist. We conclude that this court lacks subject matter jurisdiction over those claims.

"Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case [or claim] over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 598–99, 952 A.2d 115 (2008).

Even though the issue of mootness was not raised in the defendant's brief or at oral argument, this court has a duty to consider it sua sponte because mootness implicates the court's subject matter jurisdiction. It is, therefore, a threshold matter to resolve. See id., 598. "[T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province

of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Smith-Lawler* v. *Lawler*, 97 Conn. App. 376, 378–79, 904 A.2d 1235 (2006).

With this in mind, we address the defendant's claim that on September 13, 2006, the court, *Solomon, J.*, improperly vacated the prior order entered by Judge Prestley staying the defendant's alimony obligations. In its March 2, 2007 memorandum of decision rendering final judgment on the defendant's motion to modify alimony, the court instructed that the judgment and new alimony order were "retroactive to June 14, 2006." It goes without saying that June 14, 2006, predates the September 13, 2006 order vacating the temporary stay of alimony. Consequently, the claim is rendered moot because a reversal of the September 13, 2006 order would provide no benefit to the defendant, as the subsequent judgment has retroactive effect.

We next address the claim that the court improperly failed to consider, and improperly excluded from evidence, the letter from the defendant's physician at the September 13, 2006 hearing. On January 8, 2007, that very letter was admitted into evidence and was a full exhibit before the court when it rendered judgment on March 2, 2007. Having already determined that the defendant's challenge to the September 13, 2006 alimony order is moot, and because the letter was properly admitted into evidence later, a reversal of the court's exclusion of the letter on September 13 would provide no practical relief to the defendant. The claim, therefore, is likewise moot, and we lack jurisdiction to afford it consideration. We therefore dismiss this portion of the appeal.

## II

We next consider the defendant's claim that the court improperly found that the plaintiff's objection to the requests for admission was justified and that it complied with the requirements of Practice Book §§ 13-22 and 13-23. We begin by setting forth the applicable standard of review. Our Supreme Court has "long recognized that the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed." (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003).

Practice Book (2006) § 13-22 (a) provides in relevant part: "A party may serve . . . upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters relevant to the subject matter of the pending action set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the existence, due execution and genuineness of any documents described in the request. . . ." The defendant's requests in the present case sought twenty-eight separate admissions. Most of those concerned the defendant's physical condition, his various stays in the hospital, his employment status and salary, and the authenticity of records, letters and invoices kept by his various health care professionals.

The plaintiff objected to the defendant's requests in their entirety, noting that she did not have sufficient knowledge or ability to enable her to make an admission or denial of the requested admissions. Practice Book § 13-23 governs answers and objections to requests for admissions and provides in relevant part: "Each matter of which an admission is requested is admitted unless

. . . the party to whom the request is directed files and serves upon the party requesting the admission a written answer or objection addressed to the matter . . . . An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless such party states that he or she has made reasonable inquiry and that the information known or readily obtainable by him or her is insufficient to enable an admission or denial. . . ." Practice Book § 13-23 (a).

With regard to the genuineness of the medical reports, letters and records, the court held, citing another Superior Court decision; see *Marks* v. *Beard*, Superior Court, judicial district of Fairfield, Docket No. CV-92-0301307-S (June 21, 1994) (11 Conn. L. Rptr. 638); that it was inappropriate to require the plaintiff to admit or deny the genuineness of documents prepared by a third party unrelated to the plaintiff. It similarly held that the facts contained in the requests for admission related exclusively to the defendant's relationships with his medical practitioners and his employer. As such, the court found that it was inappropriate to require the plaintiff to admit or deny those facts of which she had no prior knowledge and that did not directly involve her in any manner.

Indulging every presumption in favor of the correctness of the court's determination, we conclude that it was not an abuse of the court's discretion to decline to order the plaintiff to admit or deny the genuineness of the defendant's documents. Further, it was not an abuse of discretion to decline to order the plaintiff to admit the truth of facts that were within the exclusive knowledge of the defendant and his health care practitioners. Additionally, we note that the court indicated that the most appropriate way to introduce the evidence sought to be admitted in the requests would be through depositions of the defendant and his oncologist. Such depositions did take place, and most, if not all, of the

facts that were the subject of the defendant's requests for admission were proven; most, if not all, of the documents that were the subject of the defendant's requests for admission were admitted as full exhibits. We conclude, therefore, that the court did not abuse its discretion in failing to order that the plaintiff admit or deny the facts and documents in the defendant's requests for admission.

## III

We next consider the merits of the defendant's challenge to the court's ruling on his postjudgment motion to modify. The court granted the defendant a modification of alimony from $300 per week to $100 per week. The defendant claims that this reduction was insufficient. He asserts that (1) the court's order modifying his alimony obligation was improper and against the weight of the evidence and (2) the court improperly required him to pay $3600 in arrearages.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed." (Internal quotation marks omitted.) *Signore* v. *Signore*, 110 Conn. App. 126, 129–30, 954 A.2d 245 (2008).

In the present case, the court based its modification order on its understanding of the defendant's changed circumstances. In his brief, the defendant proffers a detailed mathematical equation in an attempt to demonstrate that the court improperly calculated his ability to pay $100 in weekly alimony. Because we review the court's factual findings as to the defendant's income and expenses under the clearly erroneous standard, we must affirm the court's decision unless there is either no evidence to support the court's findings or we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 130. Having reviewed the record and the exhibits introduced at trial, we cannot say that the court's factual findings regarding the defendant's income and expenses were clearly erroneous. As such, the court did not abuse its discretion in ordering the defendant to pay $100 per week.

The court also ordered the plaintiff to pay $3600 in alimony for the missed payments from the week of June 11, 2006, through the filing of the memorandum of decision. The defendant claims that the court found that he was able to pay that sum on the basis of an improper determination that he had received $50,000 during that time period. The finding is one of fact, which we review under the clearly erroneous standard discussed previously. The court's memorandum of decision does not contain any mathematical calculation of the defendant's income during the applicable time period. The defendant testified that during the applicable period of time, he had received some income from his salary and two bonuses in addition to $20,000 from other sources. Because the defendant did not move for an articulation of the court's calculation pursuant to

Practice Book § 66-5, and because there is sufficient evidence in the record to support the court's finding that he was able to pay the sum, we cannot say that its finding was clearly erroneous or that the order was an abuse of the court's discretion.

## IV

Finally, we address the defendant's claims regarding the finding of contempt. The defendant contends that the court improperly found him in contempt for failure to pay alimony during the pendency of his motion to modify. As discussed in part I, the defendant asserts that the order reinstating his alimony obligations was improper. He claims that, as such, the court should not have held him in contempt for failure to observe that arguably improper order. We disagree.

"[O]ur analysis of a [civil] judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

We address our threshold inquiry to the court's September 13, 2006 order terminating the stay that was entered on August 2, 2006. The order was entered in response to an explicit request by the plaintiff to terminate that stay. The order stated: "The court vacates the stay effective today." Read in context of the plaintiff's

request, the order could not be more clear or unambiguous. Further, the defendant does not claim on appeal that the order was not clear and unambiguous.

The second step in the inquiry requires us to determine if the court abused its discretion in.holding the defendant in contempt. We note at the outset that in its memorandum of decision, the court explicitly found that the defendant was on notice of the order and that his violation of the order was wilful. Further, there is nothing in the record that would suggest that this was not the case. Rather, the defendant's primary argument appears to be that because the underlying order was improper, the finding of contempt was likewise improper. This argument, however, is contrary to established principles underlying civil contempt.

"[A]n order issued by a court of competent jurisdiction must be obeyed by the parties until it is reversed by orderly and proper proceedings. . . . [A] party has a duty to obey a court order however erroneous the action of the court may be . . . . Consistent with that conclusion . . . a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed . . . and . . . there is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, 273 Conn. 418, 425–26, 870 A.2d 1039 (2005), citing *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 496 A.2d 476 (1985); see also *Walker* v. *Birmingham*, 388 U.S. 307, 87 S. Ct. 1824, 18 L. Ed. 2d 1210 (1967). This being the case, we need not address the substance of the September 13, 2006 order and conclude that the court did not abuse its discretion in holding the defendant in contempt for failure to comply with the order.[5]

---

[5] The defendant also claims that the court improperly ordered him to pay $750 in attorney's fees as a sanction for his contempt of court. In his brief, the defendant argues, essentially, that the plaintiff's counsel engaged in dilatory tactics and violations of the rules of practice and, as such, should

The appeal is dismissed with respect to the defendant's claims challenging the September 13, 2006 rulings. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

not benefit from an award of attorney's fees. This argument is unrelated to the award of attorney's fees to the plaintiff for the defendant's contempt. We conclude that to the extent that the defendant claims that the $750 award was improper, independent of his claim regarding the finding of contempt discussed previously, such claim was inadequately briefed, and we decline to address it. See *Moran* v. *News Media Group, Inc.*, 100 Conn. App. 485, 506, 918 A.2d 921 (2007).