## SANTIAGO MALAVE, JR. *v.* MARIA ORTIZ
## (AC 28847)

McLachlan, Lavine and Schaller, Js.

---

[11] This represents an interest rate of 304 percent per annum.

Argued December 9, 2008---officially released May 19, 2009

*Francis A. Miniter*, for the appellant (defendant).

*Lori Welch-Rubin*, with whom, on the brief, was *Michael Perzin*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This appeal, arising under Practice Book (2006) § 25-26 (g), concerns the application of the probable cause standard to a request for leave to file a motion to modify a child custody order. General Statutes § 46b-56 grants the trial court the authority to render orders concerning custody. *Kelly* v. *Kelly*, 54 Conn. App. 50, 55, 732 A.2d 808 (1999). Our Supreme Court has limited the trial court's broad discretion to modify custody, requiring that a modification order be based on "either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child." (Internal quotation marks omitted.) Id. The trial court's guiding principle in modifying any order with respect to custody is the best interest of the child. See *Watrous* v. *Watrous*, 108 Conn. App. 813, 824, 949 A.2d 557 (2008).

The defendant, Maria Ortiz, appeals from the judgment of the trial court denying her request for leave to file a motion for modification (request for leave) of the July, 2005 judgment awarding primary physical custody

of the parties' minor child to the plaintiff, Santiago Malave, Jr. On appeal, the defendant claims that the court (1) misapplied the probable cause standard, (2) failed to give proper weight to the child's wishes in violation of General Statutes (Rev. to 2007) § 46b-56 (c), (3) made factual findings that were clearly erroneous and (4) was biased against her. On the basis of our review of the record and the briefs and arguments of the parties, we conclude that the defendant's request for leave and her claims on appeal fail because she mistakenly has equated a substantial change of her circumstances with a substantial change of circumstances affecting the best interest of the child. We affirm the judgment of the trial court.

First we set forth the applicable standard of review. Although the defendant raises several claims, the essential issue, one of first impression, is whether the court properly construed Practice Book § 25-26 (g). Section 25-26 is entitled "Modification of Custody, Alimony or Support." Construction of our rules of practice presents a question of law over which our review is plenary. *Zirinsky* v. *Zirinsky*, 87 Conn. App. 257, 269, 865 A.2d 488, cert. denied, 273 Conn. 916, 871 A.2d 372 (2005). In construing our rules of practice, "we are guided by the principles governing statutory interpretation. *Pitchell* v. *Hartford*, 247 Conn. 422, 432, 722 A.2d 797 (1999) . . . . Our fundamental objective in interpreting a rule of practice is to ascertain and give effect to the intent of the drafters. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Citation omitted; internal quotation marks omitted.) *Dartmoor Condominium Assn., Inc.* v. *Guarco*, 111 Conn. App. 566, 569–70, 960 A.2d 1076 (2008).

In undertaking our plenary review, we have read the entire record, including the transcript of the hearing

held between September 25, 2006, and January 30, 2007, as well as the transcript of arguments on the defendant's motion for reconsideration on May 3, 2007.[1] The following procedural history is significant. The parties, who never married one another, are the parents of a child born in 1995. Until March, 2005, the child resided primarily with the defendant and regularly visited with the plaintiff. In March, 2005, the plaintiff filed a verified application for emergency custody of the child, after the commissioner of children and families (commissioner) filed a neglect petition on behalf of the child.[2] On July 7, 2005,[3] the court, *Munro, J.*, rendered a final judgment of custody and visitation pursuant to the parties' stipulated agreement.[4]

On April 26, 2006, the defendant filed a request for leave to which she attached a motion for modification of the July, 2005 judgment. The defendant asserted that since the rendering of the July, 2005 judgment "the circumstances concerning this case have changed substantially as follows: presence of other child is gone,[5]

[1] We were not provided with a transcript of closing arguments at the close of evidence.

[2] At the time the commissioner filed the neglect petition, the defendant and the child were homeless and living in a shelter. Both of them required mental health care.

[3] Previously, Judge Munro had issued temporary custody orders pursuant to the parties' agreements. On July 7, 2005, either one of the parties could have asked the court for a hearing de novo if he or she thought that the agreed upon visitation schedule was not in the child's best interest. Neither party requested a trial de novo.

[4] Pursuant to the July, 2005 judgment, the parties share joint legal custody of the child with the plaintiff having final decision-making authority and primary physical custody of the child. The defendant has visitation rights on alternate weekends and on Sundays from 11 a.m. until 3 p.m. The plaintiff is permitted, however, with reasonable advance notice, to visit with the child on Sundays, if he has vacation or family plans involving the child. In her request for leave, the defendant did not allege that the judgment was not in the best interest of the child.

[5] Prior to March, 2005, while the defendant and the child were sharing an apartment with a friend of the defendant, the child was molested sexually by the friend's older child.

[the defendant] has been in therapy as has [the child] and both are doing well." The defendant asked that custody be modified as follows: "Grant primary residence to [the defendant] who had same until March 2005." The plaintiff filed an objection to the request for leave on May 1, 2006. In his objection, the plaintiff stated in part that "[t]he July 2005 judgment changed the . . . child's living situation from a New Haven shelter with the defendant to [the plaintiff's] home in Hartford. Attendant to that was the child's change of schools (to Hartford) and his recent change of a long-standing New Haven therapist to therapy in Hartford, all at the initiation of [the plaintiff]. It is only nine (9) months since the entry of the most recent judgment, and any possible modification of the judgment so soon could not be in the child's best interests because of the major changes the child has experienced. . . . The plaintiff . . . asks the [c]ourt to review the underlying issues and motions which resulted in the July 2005 judgment. Given the relatively short time since the judgment, and the severity of the defendant's underlying problems and her chronic situation in July 2005, it is simply too soon to put the child through another proceeding."

The parties appeared at short calendar before the court, *Burke, J.*, on June 29, 2006, and made various arguments.[6] Judge Burke ordered the matter continued

---

[6] Counsel for the defendant argued that the request for leave should be granted because the defendant had moved out of the apartment she shared with a woman whose son had molested the parties' child and established herself in her own one bedroom apartment.

Counsel for the plaintiff represented, in part, that the child was then a ten year old special education student. Since 2002, the child has lived with his mother in seven different locations and changed schools multiple times, on occasion at midyear. While he was in the defendant's custody, the child was molested sexually on two separate occasions by two different older children. The department of children and families found that the child had been neglected. The child's therapist last year opined that the child was not safe and that the defendant could not provide for him, given her health issues. He was failing in the New Haven school system last year and, subsequent to the July, 2005 judgment, was transferred to the Hartford school system, where he is doing well.

so that testimony could be taken. On September 25, 2006, the first day of the continued hearing, the court, *Frazzini, J.*, ordered that neither party should initiate a conversation with the child regarding where he wants to live. During the defendant's testimony that day, counsel for the plaintiff objected to hearsay testimony regarding the child's relationship with the plaintiff. The court ruled that only evidence pertaining to the material changes alleged in the request for leave was admissible. The court denied the defendant's request for leave without prejudice on the basis of the changes alleged in the original request for leave.

On September 26, 2006, the defendant filed an amended motion for modification in which she alleged that (1) the older, second child who had molested the parties' child had had no contact with the child or the defendant since early 2005, (2) the defendant had undergone rigorous treatment for her bipolar disorder, is currently taking fewer medications,[7] is seeing a therapist less often and is able to provide a stable living environment for the child, (3) the child, who is ten years and ten months old, wants to live with the defendant and (4) the child's living conditions with the plaintiff have deteriorated. The court permitted the defendant to amend her motion for modification, reasoning that for the child's sake, it was better to resolve the request for leave in the present proceeding than to cause a delay by requiring the defendant to file another request for leave.

---

Counsel for the defendant objected to those factual representations and argued that the factual disputes necessitated a full custody hearing. The plaintiff's counsel also implored the court, given the short period of time since the rendering of the July, 2005 judgment, not to put the child through another series of evaluations and introduce new people into his life. He also argued that it would not be in the child's best interest for him to know that his parents were disputing his custody again.

[7] At the time the commissioner filed the neglect petition, the defendant was taking so many medications that she was too tired to supervise the child.

Following a five day hearing, during which the defendant presented evidence for three and one-half days, on March 19, 2007, the court issued a memorandum of decision denying the defendant's request for leave. In its memorandum of decision, the court noted the criterion for granting a request for leave, i.e., whether the moving party has demonstrated probable cause to believe that grounds exist for the proposed motion to modify custody to be granted. The court identified and set forth at length the probable cause standard applicable to civil litigation and the two prongs used to assess a motion to modify custody, specifically, whether a material change of circumstances has occurred since the last custody order was entered; see *Kelly* v. *Kelly*, supra, 54 Conn. App. 55–56; and whether the proposed modification is in the best interest of the child. The court pointed out that the legislature recently had enacted a series of criteria a court may consider in determining the child's best interest. See Public Acts 2005, No. 05-258, § 3.[8] The best interest standard, the

[8] Public Acts 2005, No. 05-258, § 3, has been codified in General Statutes § 45b-56 (c), which provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the

court continued, is inherently flexible and fact specific and gives the court discretion to consider all of the different and individualized factors that might affect a specific child's best interest. The court stated that to grant the request for leave, the defendant had to demonstrate probable cause to meet both prongs of the modification test.

After making factual findings regarding the child's life and circumstances prior to the rendering of the July, 2005 judgment, the court found that two of the material changes of circumstances alleged by the defendant, which were that the child has had no contact with the older child who had molested him and that he wants to live with the defendant, predated the 2005 judgment and were not, therefore, material changes. The court concluded that the allegation concerning the degree to which the defendant's mental health had improved was the dispositive issue. The court did not find credible the defendant's evidence that her mental health had improved sufficiently to establish probable cause that she was able to provide the child with a stable home environment. The court also found that there was no credible evidence that the plaintiff's wife and family were hostile toward the child and that the plaintiff risked alienating the child by refusing to let him live

household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers."

with the defendant. The court, therefore, denied the defendant's request for leave.

On March 28, 2007, the defendant filed a motion for reconsideration. The court granted the defendant's motion for reconsideration but denied the relief requested in a memorandum of decision dated May 4, 2007.[9] With respect to the motion for reconsideration, the court disagreed that March 2, 2005, was the relevant date from which a material change of circumstances was to be determined. The court repeated its conclusion that the lack of contact with the older child who had molested the parties' child was not a change of circumstances and that there was no credible evidence that the plaintiff's family was hostile toward the child or that the child was subject to risks in the plaintiff's custody. Moreover, in addition to not being a new circumstance, the child's desire to live with the defendant was a matter more appropriately considered under the best interest prong than the change of circumstances prong of a custody modification determination. The court rejected the defendant's testimony that as a result of the dialectic mental health treatment she had received, her psychiatric condition had stabilized and that she was able to provide a stable environment for the child. The court explained that it was not required to accept her testimony uncritically or find that her testimony was sufficient to prove probable cause such that the motion to modify custody would be granted. The defendant timely appealed.

Practice Book (2006) § 25-26 (g) provides in relevant part that "[a]ny motion for modification of a final custody or visitation order . . . shall be appended to a

[9] On May 8, 2007, the court issued, apparently sua sponte, a corrected memorandum of decision on the defendant's motion for reconsideration to rectify a scrivener's error in one sentence on page five of its original memorandum of decision. The rectification is of no consequence to the issues on appeal.

request for leave to file such motion . . . . The specific factual and legal basis for the claimed modification shall be sworn to by the moving party . . . . If an objection is filed, the request shall be placed on the next short calendar . . . . At such hearing, the *moving party must demonstrate probable cause that grounds exist for the motion to be granted. . . .*" (Emphasis added.)

"Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstances warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Citations omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 738, 638 A.2d 1060 (1994). "[I]ts inquiry is necessarily confined to a comparison between the current conditions and the last court order." Id. "The court must first consider what circumstances have changed warranting a custody change and then make a custody determination on the basis of the best interest of the child." *Payton* v. *Payton*, 103 Conn. App. 825, 839, 930 A.2d 802 (*Schaller, J.*, concurring), cert. denied, 284 Conn. 934, 935 A.2d 151 (2007). "Among the various factors the court may consider when determining the best interest of the child are the parties' parenting skills . . . the child's emotional ties to each parent . . . the psychological instability of the parent and whether the child is in a stable and loving environment. . . . In reaching a decision as to what is in the best interests of a child, the court

is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." (Citations omitted; internal quotation marks omitted.) *Watrous* v. *Watrous*, supra, 108 Conn. App. 824–25.

"The well settled standard of review in domestic relations cases is that this court will not disturb the trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007). "It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Internal quotation marks omitted.) *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 695, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007).

I

The defendant's first claim on appeal is that the court misapplied the probable cause standard articulated in its memorandum of decision. The defendant does not claim that the standard articulated by the court was improper but that the court engaged in a material change of circumstance analysis applicable to the motion to modify custody.[10] We disagree.

[10] This claim does not appear to have been briefed adequately, as the defendant failed to articulate the applicable probable cause standard and to distinguish it from the standard applicable to a motion to modify custody. See *Zoll* v. *Zoll*, 112 Conn. App. 290, 304 n.5, 962 A.2d 871 (2009) (declining to review claims inadequately briefed). We will review the defendant's claim, however, to affirm the trial court's application of the civil probable cause standard.

Our Supreme Court has determined that "[p]robable cause is a standard widely used to validate a preliminary impairment of a broad range of personal and property rights, from the suspension of professional licenses to the issuances of warrants for seizure and arrest." *Calfee v. Usman*, 224 Conn. 29, 37, 616 A.2d 250 (1992). A "hearing in probable cause is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities." (Internal quotation marks omitted.) *Fischel v. TKPK, Ltd.*, 34 Conn. App. 22, 24, 640 A.2d 125 (1994). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Internal quotation marks omitted.) *36 DeForest Avenue, LLC v. Creadore*, supra, 99 Conn. App. 695.

Although the defendant did not analyze her claim with respect to the standard applicable to a request for leave as opposed to that applicable to a motion to modify, the claim may stem from the volume of evidence the court considered rather than the standard it applied. We note, however, that during the first morning of the hearing, the court denied the request for leave without prejudice. Thereafter, the defendant asserted two entirely new grounds in support of her claim that a material change of circumstances had occurred, and she was responsible for the volume of the evidence presented. The amount of evidence was substantial,

given the generally limited nature of hearings in probable cause.[11] It is clear that Judge Frazzini provided the defendant an opportunity to present a substantial amount of evidence, which the plaintiff rightfully then was entitled to counter.[12]

In reviewing the court's memorandum of decision, it is clear to us that the court correctly applied the probable cause standard. Two of the defendant's allegations of material change can be addressed easily. The circumstances involving the older child who had molested the parties' child prior to March, 2005, was not a material change that occurred subsequent to the July, 2005 judgment. As the court properly pointed out, the child's wish to live with the defendant was not a change of circumstances and is to be considered only under the best interest prong, after the court has determined that a material change of circumstances has occurred. There was no probability that a motion to modify would have prevailed on either of those alleged bases.

In her amended request for leave to conform her request for leave to the evidence, the defendant alleged, in part, that she "has rigorously undertaken a program of inpatient, outpatient and continuing care for her bipolar disorder, and is currently taking reduced prescription medications and has had visits to her therapist

[11] We note that the defendant never alleged that the July, 2005 judgment was not in the child's best interest. The plaintiff opposed the request for leave on the ground that not enough time had transpired since the July, 2005 judgment was rendered and that it was not in the child's best interest to change his residence and school so soon. The plaintiff did not want the matter continued beyond the short calendar argument before Judge Burke. The plaintiff does not appear to have raised these important considerations again before Judge Frazzini.

[12] The parties did not brief, and therefore we do not consider, the quantum of proof necessary to prevail in a probable cause hearing for leave to file a change of custody motion. In this opinion, we do not mean to imply that the extended evidentiary hearing that occurred here would be required in most probable cause hearings.

reduced very significantly and can provide a stable living environment" for the child. The defendant testified to that effect. The court, however, simply did not accept her testimony that she is able to provide the child with an adequate home environment. The court found that the defendant had difficulty remembering dates, contradicted herself as to the degree of pain she suffered due to her rheumatoid arthritis and falsely testified twice that mental illness was not a reason the Social Security Administration found that she was disabled.[13] Most importantly, the court found that the defendant almost immediately violated its order that neither of the parties initiate a discussion with the child as to where he wanted to live. After the plaintiff brought evidence to the court's attention that the defendant had violated the order, the defendant testified that she could not remember that the court had issued the order. The court concluded that whether the defendant lied about not remembering, or her mental condition was so impaired that she could not remember or obey the court's order, either reason was sufficient to weigh against finding probable cause to grant a motion to modify.

The court's credibility determinations provide the basis of the court's decision to deny the request for leave. Although it is not the province of this court to make credibility determinations, we cannot ignore the record, which supports the court's factual findings on which it based its credibility determinations. Given the court's credibility determination regarding the defendant's mental health testimony, we conclude that the court properly concluded that there was no probable cause to believe that her motion for modification would have been granted.

Despite her claim that the child's circumstances in the plaintiff's custody had deteriorated, in the context

---

[13] The defendant refused to disclose her social security records to the plaintiff's counsel until the court ordered her to do so.

of her allegation that her mental health had improved, the defendant claimed that the child also was doing well.[14] The court found that the child's mental health and school improvement was due to the steady hand of the plaintiff. The court found no credible evidence for the defendant's claim that the plaintiff's wife and relatives were hostile toward the child and that the plaintiff's refusal to let the child live with the defendant constituted a risk of alienating the plaintiff and the child. The court found that the plaintiff provides firmness and structure for the child. Although the child may complain about the plaintiff's disciplining him, the court found that the plaintiff's discipline and rules are within the limits recommended by the child's therapist. The court found that the plaintiff was not a perfect parent, however, given a temporary marital separation and an admission that he drank an alcoholic beverage when the child was in a motor vehicle he was operating. The court found that one instance of serious poor judgment, however, did not establish probable cause to believe that a motion for modification of custody would be granted.[15] The court also found that the defendant had been arrested on charges of possession of cocaine and driving under the influence in the past and that she did not have an automobile to travel between Hartford and New Haven. On the basis of the court's finding that the defendant's testimony was less credible than the plaintiff's, we conclude that the court properly determined that there was no probable cause to believe that a motion to modify custody would be granted pursuant

[14] The defendant alleged that the child was doing well with respect to his mental health improvement.

[15] The court found that the defendant's testimony that she frequently smells alcohol on the plaintiff's breath when he drives the child from Hartford to New Haven lacked credibility. Nonetheless, the court sufficiently was concerned about the plaintiff's use of alcohol that it advised the clerk to send a copy of its memorandum of decision to the department of children and families, as it had the means to conduct an investigation.

to the defendant's claim that there had been a material change of circumstances with respect to the child's living in the plaintiff's household.

## II

The defendant's second claim is that the court failed to give proper weight to the child's expressed wishes to live with her. Our review of the record supports the two reasons given by the court for not letting the child's wishes dictate its decision on the request for leave. First, the court found that the child's preference was not a material change of circumstances, and the parties themselves stipulated to that fact. Second, the court properly determined that the child's "informed preferences"; see General Statutes § 46b-56 (c) (3); were not relevant to the first prong of a custody modification determination; that is, whether a material change of circumstances had occurred.[16] Because the court determined that a motion for modification would not have been granted with respect to the first prong, there was no reason to consider the factors affecting the second prong, which is the best interest of the child. The defendant's argument on appeal seems to conflate the child's preference with the best interest of the child standard. We therefore conclude that the court did not fail to give proper weight to the child's expressed wishes.

## III

The defendant's third claim is that the court made factual findings that were clearly erroneous, and she cites certain evidence, both testimonial and physical, to support her claim. We need not address each of the defendant's examples because she does not take issue

[16] The defendant also claims that it was improper for the court not to have appointed counsel for the child. Under the circumstances of this particular case, we conclude that there was no reason for the court to appoint counsel for the child during the hearing in probable cause because the court never got beyond the material change of circumstances prong.

with the court's findings that are the foundation for its conclusion that there was no material change of circumstance that would lead the court to believe that a motion to modify custody would be granted. We therefore reject the defendant's claim.

In its memorandum of decision, the court stated that the defendant's failure to demonstrate that there had been a material change of circumstances regarding her mental health such that she "is now able to 'provide a stable environment for [the child]' . . . is probably dispositive of the present matter, for ability to provide a safe and stable environment for [the child] would be a prerequisite for a transfer of physical custody to her." The court found in this regard that when the defendant filed her request for leave, "she may still have been in therapy, but by the end of [the] hearing . . . she no longer was. She testified that after a ten day psychiatric hospitalization less than two years ago, she was in intense, four times per week treatment for a year afterward and then saw a therapist weekly but that ongoing therapy had ended, by agreement with her therapist, last December. After first claiming that she was no longer depressed and not receiving any mental health treatment, she then acknowledged continuing to see a clinician periodically and to take two medications to treat her anxiety and depression."

The court found that "the defendant's claim that her *mental* condition has improved sufficiently to establish probable cause that she is now able to provide [the child] with an adequate home environment simply was not credible or proven for a number of reasons. The defendant's own testimony about the degree of improvement in her mental status and condition was not credible. She had difficulty remembering significant dates, such as . . . whether [the child] was molested the second time before or after she moved with him to the shelter. . . . She contradicted herself . . . such as

initially claiming that she was '100 percent pain free,' then later acknowledging that the pain was still 'pretty bad.'[17] She falsely testified, at least twice, that mental illness was not one of the reasons that she had been found disabled by the Social Security Administration. Early in the hearing, she testified that the 'only reason' she was awarded social security disability benefits was 'because of my rheumatoid arthritis,' denied that her psychiatric condition had also been a reason and refused to give the plaintiff's attorney access to her social security records until the court ordered her to do so. . . . Although the court expressly ordered the parties not to discuss this case or the issues involved with [the child], almost immediately afterward she did so and yet later claimed that she could not remember the court's issuing such an order. Either she was lying about not remembering the order or her mental condition is so impaired that she cannot remember or obey court orders; either one of these weighs strongly against finding probable cause in her favor." (Citations omitted; emphasis added.)

Moreover, the court made factual findings that further undercut her claim that she was able to care for the child. The defendant, despite having joint custody of the child, has never talked to any of his teachers or counselors at school, does not know how the child is doing in school and has talked to his therapist only once. Also, the defendant was unwilling or unable to follow court orders meant to protect the child.

On appeal, the defendant does not challenge the court's findings with respect to her rheumatoid arthritis,

---

[17] Elsewhere, the court found that the defendant wears a Fentanyl patch that has reduced the pain she experiences from her rheumatoid arthritis, although that pain is still so disabling that she cannot squat, stand for long periods or clean her bathtub and feels pain when she blow-dries her hair. Even with the patch, she testified, "the pain in my joints . . . the pain in my knees and my ankles is, like, very, like unbearable. It just hurts too much."

the basis of her social security disability benefits, her lack of communication with the child's teachers and therapists or her failure to follow the court's order with respect to discussing the court proceedings with the child. Although the defendant takes issue with some of the court's findings with respect to the plaintiff's parenting abilities, she does not dispute that the child is doing well in the plaintiff's custody and that his progress and improvement are due to the plaintiff's steady hand in caring for the child. Although the defendant challenges some of the court's findings, we cannot conclude that the findings relevant to the court's denial of the defendant's request for leave are clearly erroneous.

## IV

The defendant's fourth claim is that the court improperly demonstrated a bias against her. We are not persuaded.

Following the court's issuance of its memorandum of decision, the defendant filed a motion for reconsideration. Nowhere in the motion for reconsideration, or at any time prior thereto, did the defendant ask the court to recuse itself. See Practice Book § 1-23 (procedure to follow when seeking recusal of judge). "[C]laims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed waived. . . . A party's failure to raise a claim of disqualification at trial has been characterized as the functional equivalent of consenting to the judge's presence at trial." (Citation omitted; internal quotation marks omitted.) *Wendt v. Wendt*, 59 Conn. App. 656, 692, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). Given the serious nature of the claim and the harm such allegations cast on the integrity of the judiciary, we will address it. See id., 693.

"Accusations of judicial bias . . . implicate the basic concepts of a fair trial. . . . The appearance as well

as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . Canon 3 (c) (1) [of the Code of Judicial Conduct] provides in relevant part: A judge should disqualify himself . . . in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ." (Citation omitted; internal quotation marks omitted.) Id., 691. To prevail on a claim of bias in violation of the canon, the defendant must "prove that the conduct in question gave rise to a reasonable appearance of impropriety. We use an objective rather than a subjective standard in deciding whether there has been a violation of canon 3 (c) (1). Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned . . . in a given proceeding clearly falls within the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) Id., 691–92.[18]

The origin of the defendant's claim is the court's having considered what she asserted to be a speech impediment when assessing her credibility. In its March 19, 2007 memorandum of decision, the court stated in

---

[18] Any claim of judicial bias is taken as an attack on the fairness of the judicial process. We take this opportunity to remind counsel once again that claims of judicial bias are serious matters that should not be raised for the mere purpose of seeking a reversal of a judgment. See *Wendt* v. *Wendt*, supra, 59 Conn. App. 693; see also *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 26 n.10, 961 A.2d 1016 (2009); *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 676 n.6, 657 A.2d 1115 (counsel cautioned against making claims of bias not intended to question court's integrity), cert. denied, 234 Conn. 912, 660 A.2d 354 (1995).

part that "[the defendant's] demeanor on the witness stand raises serious questions about her mental condition . . . she did not always show an ability to understand or answer questions, and *her speech was often hesitant and halting.* In view of her background of substance abuse and serious psychiatric issues . . . the resulting neglect of [the child], the resulting danger and turmoil that he faced while living in her household . . . and her unwillingness or inability to follow the court orders meant to protect [the child], the court cannot find probable cause that grounds exist to establish . . . that her mental condition has sufficiently improved and stabilized and that she is able to follow court orders and take proper care of [the child]." (Emphasis added.)

In her motion for reconsideration, the defendant asserted that "[t]he [c]ourt relies on a physical defect to establish a mental defect, in violation of the Americans with Disabilities Act [42 U.S.C. § 12101 et seq.]. . . . [T]he [c]ourt criticizes [the defendant's] lifelong speech defect and attributes it, without the basis of any evidence of any kind, to her mental condition. Counsel did not have [the defendant] testify to the defect because it was evident that she has a physical defect."[19] In its corrected memorandum of decision in response to the motion for reconsideration (corrected memorandum); see footnote 9; the court stated that it was "important . . . to note [the] point the defendant makes [with respect to] her credibility. . . . [W]hile discussing her mental condition, I referred to the fact that 'on the witness stand . . . she sometimes twitched and appeared skittish . . . and her speech was often hesitant and halting.' . . . The defendant did not introduce any evidence that she has a speech impediment.

---

[19] Although the defendant claims that the court improperly used her physical mannerisms as a basis to determine her ability to care for the child, she does not claim that the court's description of her physical demeanor was clearly erroneous.

There was no evidence, however, that these physical mannerisms showed mental illness. I thus agree with the defendant's contention that the physical manifestations to which the decision referred might not signify mental illness or instability and that I should not have considered them in assessing her credibility." (Citations omitted.)

We cannot conclude that the court's finding, on the basis of its observation of the defendant's physical mannerisms, constitutes judicial bias in the context in which it was expressed. The court did not state that it disbelieved the defendant on the basis of her speech patterns but that it found that her manner of speaking, given her record of psychiatric illness and hospitalization, belied the defendant's claim that her mental health had improved. The court placed its observation regarding the defendant's speech among its reasons to conclude that there was no probable cause that a material change of circumstance had occurred with respect to the defendant's mental health so that she could provide a stable environment for the child. In its corrected memorandum, the court credited the defendant's representation that she has a speech impediment, although she did not present evidence to that effect.[20] The court also deleted

[20] Although the defendant never presented evidence regarding her speech impediment, she failed to take the opportunity to do so when asked by the plaintiff's counsel. During the hearing, the following relevant colloquy occurred:

"[The Plaintiff's Counsel]: And I preface this; I mean no disrespect. Do you experience any physical symptoms from any of the medicines that you take?

"[The Defendant]: No.

"[The Plaintiff's Counsel]: If I suggested to you, and it could be all me, but it seems today that you are ticking a little bit or there's a little stutter or movement. Is that something that you're aware of?

"[The Defendant]: No, I'm just anxious today.

"[The Plaintiff's Counsel]: Are you more anxious today than the other four or five times that we've been here?

"[The Defendant]: No.

"[The Plaintiff's Counsel]: No side effects from any medication?

"[The Defendant]: No.

its finding with regard to the defendant's speech as a basis for its conclusion that the defendant had not demonstrated probable cause that there had been a material change of circumstances with respect to her mental health and ability to care for the child. In raising her appellate claim, the defendant fails to recognize the court's willingness to reconsider its decision.

Furthermore, we do not think that it was inappropriate for the court to note the defendant's demeanor as a witness. "An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to *observe the demeanor* of the witnesses and the parties, thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Emphasis added; internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

In her motion for reconsideration, the defendant asserted that she did not testify about her speech impediment because it was an obvious physical disability. We are hesitant to conclude that the defendant's speech impediment was an obvious physical disability. See footnote 19. The defendant does not dispute the court's findings that she suffers from mental illness, had substance abuse issues or that she continues to take medicine for her psychiatric illnesses, all of which could have affected her demeanor and thus influenced the court's conclusion with respect to the degree to which

---

"[The Plaintiff's Counsel]: Are you on any psychiatric medication at the present time?

"[The Defendant]: I have been for the past, for the past five years, the same one."

We tend to agree with the observation offered by the plaintiff in his brief that it would be wise for a person testifying in court who knowingly exhibits distracting physical mannerisms to proffer an explanation to the trier of fact to prevent the trier from misinterpreting what is being observed.

her mental health had improved. For the foregoing reasons, we reject the defendant's claim of judicial bias.

The judgment is affirmed.

In this opinion the other judges concurred.