STATE OF CONNECTICUT *v.* BRENDA J. LARSEN
(AC 29833)

Flynn, C. J., and Alvord and Peters, Js.

Argued May 18—officially released September 22, 2009

*Martha Hansen,* special public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan,* state's attorney, and *Vincent J. Dooley,* senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Brenda J. Larsen, appeals from the judgments of conviction, rendered after a trial to the court, of two counts of criminal violation of a protective order under General Statutes § 53a-223[1] and one count of criminal violation of a restraining order

---

[1] General Statutes § 53a-223 (a) provides in relevant part: "A person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order."

under General Statutes § 53a-223b.[2] On appeal, the defendant claims that the evidence was insufficient to support her convictions because the state failed to prove beyond a reasonable doubt that she had the requisite intent to violate the orders. We disagree and affirm the judgments of the trial court.

The court reasonably could have found the following facts. The defendant and Charles Larsen (Larsen), then eighty-one years old, were married on January 14, 2002. The defendant is more than thirty years younger than Larsen. Beginning in 2006, the relationship deteriorated. In November, 2006, the defendant was arrested for assaulting Larsen. A protective order was issued on November 29, 2006, prohibiting the defendant from having any contact in any manner with Larsen. That order was modified on December 7, 2006. The modified protective order had less restrictive terms, requiring the defendant to refrain from threatening, harassing or assaulting Larsen rather than barring all contact with him. In bold capital letters at the bottom of the modified protective order is the statement: "This order remains in effect until final disposition of the criminal case or until further order of the court."

In February, 2007, Larsen brought an action to dissolve the marriage and sought a restraining order at that time. In the sworn affidavit attached to the application, he described incidents in which the defendant physically and verbally abused him. The restraining order was granted ex parte and subsequently modified after a hearing. The modified restraining order, issued on February 20, 2007, prohibited the defendant from

[2] General Statutes § 53a-223b (a) provides in relevant part: "A person is guilty of criminal violation of a restraining order when . . . a restraining order has been issued against such person . . . and . . . such person, having knowledge of the terms of the order . . . does not stay away from a person or place in violation of the order . . . [or] contacts a person in violation of the order . . . ."

having any contact in any manner with Larsen and provided that it would terminate on August 20, 2007.

On May 12, 2007, Harrison Formiglio, an officer with the Norwich police department, was dispatched to Larsen's residence. Larsen indicated that the defendant had just left his residence after a somewhat confrontational conversation. Formiglio confirmed with police headquarters that there was an outstanding protective order and an outstanding restraining order against the defendant. When Formiglio contacted the defendant, she indicated that she was aware that she was not to have any contact with Larsen but that she had not seen him in several months. The defendant was arrested at that time for violation of both orders (May incident).

Following the defendant's arrest, a second protective order was issued on July 6, 2007, again prohibiting any contact in any manner with Larsen and also containing the statement that it remained in effect until disposition of the criminal case or until further order of the court. On September 16, 2007, Francis Rugg and Andrew Rosedale, officers with the Norwich police department, were dispatched to Larsen's residence in response to his complaint that the defendant had violated a court order by making two telephone calls to him that day. Rugg checked the caller identification feature on Larsen's telephone and placed a call to the displayed number. The individual who answered identified herself as the defendant and admitted that she had telephoned Larsen. After verifying that there was an outstanding protective order, Rugg arrested the defendant for the violation of that order (September incident).

The charges for the violation of a protective order and the violation of a restraining order in connection with the May incident and the charge for the violation of a protective order in connection with the September incident were tried to the court on January 8, 2008. Larsen testified but was somewhat confused as to the

dates of the incidents and the behavior of the defendant on those dates. The three officers who had responded to the complaints in May and September, 2007, also testified. After the state rested, the defendant took the stand. On cross-examination, she admitted that she went to Larsen's residence on May 12, 2007, and that she was aware that she was to have no contact with him. With respect to the telephone calls she had made to him on September 16, 2007, the defendant testified that he had called her first and that she responded by making two calls to him. She further testified that she thought the court order had expired after six months and believed that she was not in violation of the restraining order.

During closing arguments, defense counsel argued that the defendant responded to Larsen's telephone calls believing that the protective order had expired. Counsel argued that the violation was not deliberate and that the court should find her not guilty as charged. The state responded that it was clear that with respect to the May incident, the defendant was aware that she was to have no contact with Larsen. With respect to the September incident, the state argued that her testimony was not credible. The court noted that there were several court orders, two protective orders[3] and a restraining order, and that it did not find her testimony credible. The court found that the state had proved the charged violations beyond a reasonable doubt and found the defendant guilty on all three counts. The defendant was sentenced on March 5, 2008, and this appeal followed.

The defendant claims that with respect to the charge arising from the September incident, there was insuffi-

---

[3] The court stated that there were three protective orders. It was referring to the first protective order issued on November 29, 2006, the modified protective order issued on December 7, 2006, and the second protective order issued on July 6, 2007.

cient evidence to convict her because she was confused as to the duration of the order in place at that time. She argues that she did not possess the requisite intent to behave in a way that violated the protective order because she mistakenly believed that it had expired. Further, the defendant argues that the cumulative evidence was insufficient for the court to find beyond a reasonable doubt that she violated the orders in place at the time of the May incident and the September incident because Charles Larsen's testimony at trial was confusing and inconsistent with the testimony of the officers as to the dates and the behavior of the defendant on those dates.

The standard for reviewing sufficiency of the evidence claims is well settled. We apply a two-pronged test. First, we examine the evidence in the light most favorable to upholding the conclusion of the trier of fact. Second, we determine whether on the facts so construed and the inferences reasonably drawn therefrom, the fact finder reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Rodriguez*, 93 Conn. App. 739, 748, 890 A.2d 591 (2006), appeal dismissed, 281 Conn. 817, 917 A.2d 959 (2007); *State* v. *Cais*, 59 Conn. App. 186, 188–89, 754 A.2d 858 (2000).

"[I]n viewing evidence which could yield contrary inferences, the [trier of fact] is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the [trier of fact's] function is to draw whatever inferences from evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Jagat*, 111 Conn. App. 173, 177, 958 A.2d 206 (2008).

To prove a charge of criminal violation of a protective order under § 53a-223, the state must demonstrate that

a protective order was issued against the defendant in accordance with General Statutes §§ 46b-38c (e) or 54-1k, and it must demonstrate the terms of the order and the manner in which it was violated. *State* v. *Hasfal*, 94 Conn. App. 741, 744–45, 894 A.2d 372 (2006). In the present case, with respect to the September incident, the defendant does not challenge that she was subject to a valid protective order or that making telephone calls to Larsen would be a violation of the no contact provision of that order. Rather, the defendant claims that the court could not find that she had the requisite intent to violate the order because she believed that it had expired at the time the calls were made.

Regarding the mental element of the crime, the violation of a protective order statute is not a specific intent crime. All that is necessary is a general intent[4] that the defendant intended to perform the activities that constituted the violation. Id. Thus, the state needed to prove that the defendant intended to contact Larsen by telephone and that this act resulted from intentional conduct rather than by accident or mistake. See *State* v. *Fagan*, 280 Conn. 69, 77–78, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

Although the defendant testified that she believed that the protective order had expired by the time of the September incident, the court was not required to credit that testimony. In fact, the court expressly stated that it did not find the defendant's testimony credible. This court will not revisit credibility determinations.

---

[4] "General intent is the term used to define the requisite mens rea for a crime that has no stated mens rea; the term refers to whether a defendant intended deliberate, conscious or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness." (Internal quotation marks omitted.) *State* v. *Charles*, 78 Conn. App. 125, 131, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003).

Whether a defendant's testimony is believable is a question solely for the fact finder. It is the absolute right and responsibility of the fact finder to weigh conflicting evidence and to determine the credibility of the witnesses. *State* v. *Hasfal*, supra, 94 Conn. App. 746.

Moreover, contrary to the defendant's argument on appeal, there was sufficient evidence from which the court reasonably could have found that the defendant intended to violate the protective order and the restraining order on May 12, 2007, and the protective order on September 16, 2007. With respect to the May incident, the defendant admitted that she had been at Larsen's residence and that she knew she was not supposed to have any contact with him.[5] Although Larsen was somewhat confused as to dates and the exact behavior of the defendant at specific times, his testimony was corroborative of Formiglio's testimony as to the events of that day. Formiglio, as the responding officer, testified that he was dispatched to Larsen's residence on May 12, 2007, and he recounted his conversation with Larsen. Formiglio also testified that he contacted the defendant, and he recounted her statements, including her initial declaration that she had not

---

[5] Although the modified protective order in place at the time of the May incident did not prohibit all contact with Larsen, it did prohibit the defendant from "threatening" or "harassing" him. "[A] family violence protective order serves notice to a defendant that any conduct on [the defendant's] part directed to the named victim that has the reasonably foreseeable effect of harassing or threatening [the victim] is proscribed." *State* v. *Charles*, 78 Conn. App. 125, 136–37, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003). The term "harass" means "to annoy persistently . . . to create an unpleasant or hostile situation . . . by uninvited and unwelcome verbal or physical conduct . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2005).

The court reasonably could have concluded that the defendant "harassed" Larsen on May 12, 2007, in violation of the modified protective order, because (1) there was a restraining order in place that prohibited all contact with him, (2) his affidavit attached to the application for that restraining order claimed that the defendant previously had physically and verbally abused him, (3) the defendant and Larsen had a somewhat confrontational conversation, and (4) Larsen contacted the police department to report the incident.

seen Larsen in several months. The date of the incident, if unclear in Larsen's testimony, was established by Formiglio.

With respect to the September incident, two officers testified that they responded to Larsen's complaint on September 16, 2007. The date of the incident was established through their testimony, even if Larsen was somewhat confused at the time of trial. The officers recounted Larsen's statements to them at that time, and one of the officers, utilizing the caller identification feature on Larsen's telephone, telephoned the defendant from Larsen's residence. The defendant answered the call, identified herself and admitted that she had telephoned Larsen twice that day. Even though she claimed that she believed the court order had expired,[6] there were *two* outstanding protective orders at that time. The first protective order issued on November 29, 2006, and modified on December 7, 2006, and the second protective order issued on July 6, 2007, expressly provided that they remained in effect until the final disposition of the criminal proceedings or until further order of the court.

Construing the evidence in the light most favorable to upholding the conclusion of the court as the trier of fact, we conclude that it had sufficient evidence from which it could determine that the state proved beyond a reasonable doubt that the defendant understood the terms of the protective and restraining orders and, with the requisite intent, violated those orders.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] The restraining order, issued at the time Larsen instituted divorce proceedings, had expired. That order was issued on February 20, 2007, and expired on August 20, 2007. The defendant, therefore, was correct that *one* of the court orders had expired by the time of the September incident. She was not charged with or convicted, however, of violating the expired order for the September incident.