STATE OF CONNECTICUT *v.* MICHAEL WINTER
(AC 26896)

Lavine, Robinson and Schaller, Js.

494

Argued June 1—officially released October 6, 2009

*Nina Trester-Cestaro*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Michael Winter, appeals from the judgments of conviction, rendered after a jury trial, of criminal violation of a protective order in violation of General Statutes § 53a-223, disorderly conduct in violation of General Statutes § 53a-182, falsely reporting an incident concerning serious physical injury or death in violation of General Statutes § 53a-180b and making a false statement in the second degree in violation of General Statutes § 53a-157b. On appeal, the defendant claims that the court improperly denied (1) his motion to dismiss the charge of criminal violation of a protective order and (2) his motion for a judgment of acquittal. We disagree and affirm the judgments of the trial court.

The jury reasonably could have found the following facts. A family violence protective order was issued on January 27, 2003, against the defendant at the request of Debra L. Thibault, his former girlfriend. He had continued to contact Thibault, primarily via e-mail, after their relationship ended, and she sent him a certified letter in June, 2002, which stated that on the basis of the advice she received from an officer at the Woodbury police department, she was asking him to stop contacting her. The defendant sent Thibault a letter despite her request, and she contacted the Woodbury police department. She also received numerous telephone

calls and voicemail messages from the defendant in September, November and December, 2002, and a Christmas card from him in December. A warrant was issued for the defendant's arrest after Thibault filed a complaint after receiving the telephone calls from him.

As a result, the 2003 protective order was issued, which forbade the defendant from having any contact in any manner with Thibault and from coming within 100 yards of her.[1] In issuing the order, the court indicated that the defendant and the victim had been dating for one and one-half years. Despite the 2003 protective order being in place, the defendant was arrested a second time and charged with criminal violation of the protective order and stalking in the first degree after an incident on June 17, 2003, in which Thibault found the defendant standing in her driveway when she returned home from work that evening.[2]

In addition, on January 4, 2004, the defendant made a telephone call to 911 in which he reported that Thibault had called him and threatened to kill herself. He told the 911 dispatcher, located at the Litchfield barracks of the state police, what he claimed that Thibault had said to him. He stated: "I'm not sure if I've got a hoax going on here, or a problem, but at least, just to make sure, I'm calling you guys. I just got a call from my ex-girlfriend. Real quickly, she said, 'This is [Thibault]. I'm thinking about killing myself unless I'm able to talk to you.' And she hung up on me. Now, she has a protective order on me where I cannot talk to her. I didn't say a word. She just hung up. I don't know if she's playing games or if she really is suicidal."

After receiving the telephone call from the defendant, Lawrence Rockhill, a Woodbury police officer, and

---

[1] The protective order did permit the parties to be present together in small claims court as needed to resolve pending litigation.

[2] Thibault also had received two telephone calls from the defendant on March 28 and 29, 2003, which she reported to the police.

Anthony Carter, a state police trooper, went to check on Thibault's well-being, while another trooper, Dane Hassan, interviewed the defendant. Thibault denied making any telephone call to the defendant and did not appear to Carter to be distressed or in a condition such that she might harm herself. After being interviewed by Hassan, the defendant signed a sworn statement attesting that he had received a telephone call from someone whom he believed to be Thibault and that that person told him that she was going to commit suicide and that he notified the authorities because he was worried about her.

Carter, who had just interviewed Thibault, then arrived and questioned the defendant. Hassan testified that the defendant incriminated himself by changing his story, by his body posture, by the fact that he used the past and present tense and by his agitation toward Thibault followed by his statements that he hoped that after this telephone call, she would call him and they could reconcile. As a result of this incident, the defendant was arrested and charged with criminal violation of a protective order, falsely reporting an incident concerning serious physical injury or death in violation of § 53a-180b, making a false statement in the second degree in violation of § 53a-157b and disorderly conduct in violation of § 53a-182 (a) (2).[3]

The charges against the defendant were consolidated and trial began on May 6, 2005. On June 7, 2005, the jury returned a verdict of not guilty on the charges of stalking in the first degree and one count of criminal violation of a protective order. The jury returned a verdict of guilty of disorderly conduct, falsely reporting an incident concerning serious physical injury or death,

[3] A second family violence protective order was issued on January 5, 2004, that again, among other prohibitions, forbade the defendant from having any contact in any manner with Thibault and from coming within 100 yards of her.

making a false statement in the second degree and the second count of criminal violation of a protective order.[4] The defendant filed an amended motion to dismiss on May 11, 2005, which the court denied orally on May 16, 2005.[5] He filed a motion for a judgment of acquittal on June 14, 2005, and a motion for a new trial on June 14, 2005. The court denied these motions in a memorandum of decision issued on May 30, 2007. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his amended motion to dismiss. He asserts that the court did not have jurisdiction to issue the 2003 protective order because the situation did not involve family violence, his relationship with Thibault was not a recent one and the order was issued in connection with an unlawful arrest. We disagree.

The following additional facts are relevant to the resolution of the defendant's claim. The defendant filed an amended motion to dismiss on May 11, 2005, in which he alleged that he and Thibault had been in a relationship from January, 2001, through sometime in 2002, during which, at least part of that time, Thibault was still married. The defendant admitted to receiving a certified letter from Thibault in June, 2002, which was admitted as an exhibit at trial and which stated that she had attempted to end their relationship in the past few months before that date and was asking him again not to contact her by telephone, e-mail or in person or she would have no choice but to contact the police.

---

[4] The defendant was found guilty of the charge of violating the 2003 protective order, relating to the incident on June 17, 2003, when Thibault came home to find the defendant standing in her driveway.

[5] The defendant moved to dismiss the charges pursuant to Practice Book § 41-8.

In the motion, the defendant claimed, among other things, that the count concerning the criminal violation of a protective order should be dismissed because the court lacked subject matter jurisdiction to issue the protective order, as there was no allegation that a "family violence crime" had occurred as defined by General Statutes § 46b-38a (1), nor were he and Thibault married or in a recent dating relationship, as required by General Statutes § 46b-38c.[6] Similarly, he asserts that because there were no reported acts of physical violence or threats of physical violence, the court lacked the authority to issue the protective order and that the counts of the information involving a violation of the protective order should be dismissed because the protective order was transparently invalid. In conjunction with that claim, the defendant also asserts that his arrest on the 2003 charge of criminal violation of the protective order was invalid because the statute proscribing harassment in the second degree, General Statutes § 53a-183, with which he also had been charged, does not apply to cellular communications, and if he could not be arrested on a charge of violation of § 53a-183 that was based on

---

[6] General Statutes § 46b-38a (1) provides: "Family violence means an incident resulting in physical harm, bodily injury or assault, or an act of threatened violence that constitutes fear or imminent physical harm, bodily injury or assault between family or household members. Verbal abuse or argument shall not constitute family violence unless there is a present danger and the likelihood that physical violence will occur." (Internal quotation marks omitted.)

General Statutes § 46b-38c provides in relevant part: "(d) In all cases of family violence . . . [a] judge of the Superior Court may consider and impose the following conditions to protect the parties, including, but not limited to: (1) Issuance of a protective order pursuant to subsection (e) of this section . . . . Such protective order shall be an order of the court . . . .

"(e) A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including, but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim, (2) threatening, harassing, assaulting, molesting or sexually assaulting the victim, or (3) entering the family dwelling or the dwelling of the victim. . . ."

his telephone calls to Thibault's cellular telephone, the subsequent protective order should not have been issued.

We first set forth the general legal principles governing our review of the denial of the defendant's motion to dismiss. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2008).

A

The defendant's assertion that the court "lacked jurisdiction" to issue the protective order is in actuality a challenge to the underlying factual findings made by the court in issuing the protective order and will be addressed as such. Substantively, it is not, as the defendant claims, a challenge to the court's jurisdiction. It is the substance and not the title of the claim that controls our analysis. See, e.g., *State* v. *Peay*, 96 Conn. App. 421, 436 n.9, 900 A.2d 577, cert. denied, 280 Conn. 909, 908 A.2d 541 (2006).

The court, in an oral decision denying the defendant's motion to dismiss, stated: "Reviewing all the facts and circumstances regarding issuance of the family violence protective order, the defendant has provided no persuasive evidence that the order lacked any pretense to validity at the time it was issued. The court also finds

that the defendant has not met his burden to demonstrate that the collateral attack on the order in this proceeding is appropriate pursuant to [*State* v. *Wright*, 273 Conn. 418, 426, 870 A.2d 1039 (2005)]."

The collateral bar rule, initially applied in the context of a contempt proceeding, holds that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed"; (internal quotation marks omitted) *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 148, 496 A.2d 476 (1985); and that "there is no privilege to disobey a court's order because the alleged [subject] believes that it is invalid." Id. The collateral bar rule has been extended to apply to situations in which, as in this case, the defendant seeks to attack the validity of a court order in a criminal proceeding, and the rule "is justified on the ground that it advances important societal interests in an orderly system of government, respect for the judicial process and the rule of law, and the preservation of civil order." *State* v. *Wright*, supra, 273 Conn. 426. "[A]n order issued by a court of competent jurisdiction must be obeyed by the parties until it is reversed by orderly and proper proceedings. . . . [A] party has the duty to obey a court order however erroneous the action of the court may be . . . ." (Internal quotation marks omitted.) *Zoll* v. *Zoll*, 112 Conn. App. 290, 304, 962 A.2d 871 (2009).

In *Zoll*, in which the defendant was found to be in contempt of court and, on appeal, challenged the validity of the underlying contempt order, this court declined to address the substance of the underlying order and held that his argument that because the underlying order was improper, the finding of contempt was likewise improper was contrary to established principles underlying civil contempt. Id. This court emphasized that a contempt proceeding does not permit the reviewing court to reconsider the underlying legal and factual basis for the initial order. Id.

Furthermore, and most importantly, the validity of the underlying order is not an element of the crime of criminal violation of a protective order under § 53a-223.[7] See *State* v. *Manns*, 91 Conn. App. 827, 833, 882 A.2d 703, cert. denied, 276 Conn. 927, 889 A.2d 818 (2005). In *State* v. *Wright*, supra, 273 Conn. 418, our Supreme Court held that the invalidity of the protective order does not constitute a legitimate defense to the charged crime. Id., 424. The *Wright* court began its analysis by reiterating its holding in *Cologne* v. *Westfarms Associates*, supra, 197 Conn. 147–48, that in the context of a contempt proceeding, "an order issued by a court of competent jurisdiction must be obeyed by the parties until it is reversed by orderly and proper proceedings." (Internal quotation marks omitted.) *State* v. *Wright*, supra, 425. In extending the application of this rule from a contempt proceeding to a protective order, the court concluded: "If the defendant believed that the [protective] order did not comport with the statutory requirements of § 46b-38c (e), he had two lawful remedies available to him. He could have: (1) sought to have the order modified or vacated by a judge of the Superior Court pursuant to Practice Book § 38-13; or (2) appealed the terms of the order to the Appellate Court in accordance with General Statutes § 54-63g. Having failed to pursue either remedy, the defendant may not seek to avoid his conviction for violating that order by challenging the factual basis of its issuance."[8] *State* v. *Wright*, supra, 426–27; see also *State* v.

[7] General Statutes § 53a-223 (a) provides in relevant part: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c . . . has been issued against such person, and such person violates such order."

[8] Practice Book § 38-13 provides in relevant part: "The judicial authority shall have the power to modify or revoke at any time the terms and conditions of release . . . ."

General Statutes § 54-63g provides in relevant part: "Any accused person . . . aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

*Manns,* supra, 833. On the basis of the foregoing, we conclude that the collateral bar rule prohibits the defendant from challenging the validity of the protective order.

## B

The defendant also argues that his circumstances fall within a recognized exception to the collateral bar rule, namely, that the order was transparently invalid. He first asserts that this exception should apply because there were no reported acts of physical violence or threats of physical violence. He additionally claims that the order was transparently invalid because the harassment statute, § 53a-183, does not apply to communications made via cellular telephones. We find both arguments unpersuasive.

The transparently invalid order exception rests on the premise that "a court issuing a transparently invalid order is acting so far in excess of its authority that it has no right to expect compliance and no interest is protected by requiring compliance." (Internal quotation marks omitted.) *State* v. *Wright,* supra, 273 Conn. 429. The exception should be applied only "in those extremely rare cases [in which] the order . . . had [no] pretense of validity at the time it was issued . . . ." (Citations omitted; internal quotation marks omitted.) Id. Additionally, the exception applies only "when a defendant can show compelling circumstances, such as the need to act immediately, that excuse his decision not to seek or to await emergency relief from a reviewing court." (Internal quotation marks omitted.) Id., 430.

In claiming that the court issued the order despite the absence of reported instances of violence, the defendant is challenging again the factual conclusions reached by the court in issuing the order. The *Wright* court rejected a similar claim, noting that "despite [the]

alleged mistake of fact, the court could have imposed the same conditions on the defendant's release pursuant to the general authority vested in it by General Statutes § 54-64a. That statute affords a Superior Court judge broad discretion in fixing nonfinancial conditions of a defendant's release for the purpose of ensuring, inter alia, the safety of others, including restrictions on entering a specific place of abode and on having contact with an alleged victim of the crime with which the defendant has been charged." *State* v. *Wright*, supra, 273 Conn. 430. We conclude, therefore, that the defendant's argument fails.

In the alternative, the defendant contends that the transparently invalid order exception should apply because the harassment statute, § 53a-183, does not apply to calls made to cellular telephones, and, therefore, his arrest on charges of having violated § 53a-183 was unlawful. In its oral decision, the court concluded that "[a]s to whether § 53a-183 applies to cellular [telephones], the defendant has provided no authority, either case law or a legislative history, to support the argument that [cellular telephones] are not synonymous with telephones for purposes of this particular statute, that is, the harassment statute." The defendant is challenging the legal conclusion of the court that cellular telephones are covered by the prohibitions found in § 53a-183. Our review is, therefore, de novo. See *State* v. *Orr*, 291 Conn. 642, 650, 969 A.2d 750 (2009) ("[b]ecause statutory interpretation is a question of law, our review is de novo" [internal quotation marks omitted]).

In construing § 53a-183, we are mindful that General Statutes § 1-2z provides that "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually

does apply." (Internal quotation marks omitted.) *State v. Lewis*, 113 Conn. App. 731, 743, 967 A.2d 618, cert. granted on other grounds, 292 Conn. 906, 973 A.2d 105 (2009). "In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State v. Fontaine*, 112 Conn. App. 190, 196, 962 A.2d 197, cert. denied, 290 Conn. 921, 966 A.2d 238 (2009).

We therefore begin our analysis by examining the text of the statute. Section 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." Section 53a-183 (a) (3) instructs us that it applies to the making of "a telephone call . . . ." General Statutes § 53a-183 (a) (3). There is nothing in the statute indicating that it is restricted to telephone calls made only on certain types of communication devices.

Although the text of § 53a-183 does not specifically name communications via cellular telephones as being prohibited means of harassment, we note that "[t]he fact that . . . relevant statutory provisions are silent . . . does not mean that they are ambiguous. . . . Significantly, [t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *State v. Orr*, supra, 291 Conn. 653–54.

We emphasize that "our case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one *plausible* interpretation." (Emphasis added.) Id., 654. The official comments to § 53a-183 by the commission to revise the criminal statutes state: "The basic rationale behind this section is the prohibition of acts which are intended to annoy, alarm, or harass an individual rather than the public in general." Commission to Revise the Criminal Statutes, Penal Code comments, Connecticut General Statutes Annotated (West 2007) § 53a-183, p. 803. It is not reasonable to interpret § 53a-183 as prohibiting the making of telephone calls intended to harass, annoy or alarm only if they are made to a land line telephone but not if they are made to a cellular telephone. We conclude that the language in § 53a-183 is not ambiguous and is intended to encompass harassment via cellular telephone, and we therefore do not conduct any extratextual analysis. See *State* v. *Orr*, supra, 291 Conn. 660.

The defendant has made no showing that the court acted in such excess of authority that he could not be expected to comply with the order, nor has he shown that any emergency circumstances exist to excuse his compliance. We therefore conclude that the transparently invalid exception is inapplicable in both instances.

II

The defendant's final claim is that the court improperly denied his motion for a judgment of acquittal because his conviction was based on insufficient evidence. He asserts that there was insufficient evidence to support his conviction of criminal violation of a protective order, falsely reporting an incident concerning serious physical injury or death, making a false statement in the second degree and disorderly conduct. We disagree.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Smith*, 110 Conn. App. 70, 75, 954 A.2d 202, cert. denied, 289 Conn. 954, 961 A.2d 422 (2008). "[W]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Jason B.*, supra, 111 Conn. App. 363.

A

The defendant asserts that the state did not proffer sufficient evidence to establish that (1) he had the requisite intent to violate the protective order or (2) he was actually present on or near the victim's property on the date in question. Section 53a-223 (a) provides: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section

46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order." "[P]roof of the criminal violation of a protective order pursuant to § 53a-223 merely requires the issuance of a protective order against the defendant pursuant to § 46b-38c (e) . . . and the defendant's violation of that order." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 76, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

"[W]e have explained previously [that] a violation of a protective order does not incorporate the specific intent to harass. . . . All that is necessary is a general intent that one intend to perform the activities that constitute the violation." (Internal quotation marks omitted.) *State* v. *Hasfal*, 94 Conn. App. 741, 745, 894 A.2d 372 (2006). The state need not prove that the defendant had the specific intent to violate the protective order; rather, the state must set forth evidence that the defendant's conduct that was in violation of the order was intentional and not the result of a mistake or accident. *State* v. *Fagan*, supra, 280 Conn. 77–78. On the basis of our review of the record, we conclude that there was sufficient evidence from which the jury reasonably could have found that the defendant intended the behaviors proscribed by the protective order. Likewise, we conclude that there was sufficient evidence presented to the jury from which it reasonably could have found that the defendant was present on or near the victim's property.

B

The defendant next claims that the evidence was insufficient to support his conviction of falsely reporting an incident concerning serious physical injury or death under § 53a-180b and making a false statement

in the second degree in violation of § 53a-157b (a). Section 53a-180b (a) provides: "A person is guilty of falsely reporting an incident concerning serious physical injury or death when such person commits the crime of falsely reporting an incident in the second degree as provided in section 53a-180c and such false report is of the alleged occurrence or impending occurrence of the serious physical injury or death of another person."[9] Section 53a-157b (a) provides: "A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function."

We conclude that the jury reasonably could have found that the defendant knew that his report regarding Thibault's allegedly suicidal telephone call to him was baseless. The evidence indicated that the defendant signed a sworn statement attesting that he had received the telephone call from Thibault, and the jury reasonably could have found that he gratuitously reported to a law enforcement agent an incident involving serious physical injury or death that did not in fact occur.

## C

The defendant's final insufficiency claim relates to his conviction of disorderly conduct in violation of § 53a-182 (a), which provides in relevant part: "A person

[9] General Statutes § 53a-180c (a) provides: "A person is guilty of falsely reporting an incident in the second degree when, knowing the information reported, conveyed or circulated to be false or baseless, such person gratuitously reports to a law enforcement officer or agency (1) the alleged occurrence of an offense or incident which did not in fact occur, (2) an allegedly impending occurrence of an offense or incident which in fact is not about to occur, or (3) false information relating to an actual offense or incident or to the alleged implication of some person therein."

is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ." Although we acknowledge that the finder of fact must find every element of the statute proven beyond a reasonable doubt to find the defendants guilty of the offense charged; see State v. Muckle, 108 Conn. App. 146, 151, 947 A.2d 972, cert. denied, 288 Conn. 909, 953 A.2d 654 (2008); the defendant neglects to specify the particular element of the crime of disorderly conduct for which the state allegedly failed to set forth sufficient evidence.[10] We decline, therefore, to review his claim due to inadequate briefing. See, e.g., In re S.D., 115 Conn. App. 111, 123–24, 972 A.2d 258 (2009) ("[l]egal analysis rather than mere abstract assertions is required to avoid abandoning appellate claims by failing to brief them").

The judgments are affirmed.

In this opinion the other judges concurred.

---

[10] The defendant also maintains that he has been deprived of a fundamental constitutional right because the court failed to instruct the jury on the first amendment limitations of § 53a-182 (a) (2). He provides no analysis of this constitutional claim, and we therefore decline to afford it review.